IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF LG Model LS676, MEID DEC number **089807360708852549** CURRENTLY LOCATED AT the Cleveland Police Department 1200 Ontario Street, Cleveland, Ohio 44113. | Case No. ___1:17MJ3301-TMP___ |

## AFFIDAVIT IN SUPPORT OF AN APPLICATION UNDER RULE 41 FOR A WARRANT TO SEARCH AND SEIZE

I, Keith A. Lewis, being first duly sworn, hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1. I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the examination of property—an electronic device—which is currently in law enforcement possession, and the extraction from that property of electronically stored information described in Attachment B.

2. Affiant is a Special Agent (SA) with the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF), United States Department of Justice, and has been so employed since March 2014. Prior to becoming a Special Agent with ATF, the Affiant was an Officer with the United States Secret Service from December 2010 through March 2014. The Affiant has completed the Uniformed Police Training Program, the Federal Criminal Investigator Training Program and the ATF Special Agent Basic Training at the Federal Law Enforcement Training Center in Glynco, Georgia. The Affiant has also completed the United States Secret Service Officer Basic Training Course in Beltsville, Maryland. In addition to the firearms, arson, and

explosives related training received in these courses, the Affiant has also conducted and participated in numerous investigations involving firearms, firearms trafficking, and narcotics.

3. This affidavit is intended to show only that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

4. Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that violations of 18 U.S.C. 1959 (violent crime in aid of racketeering) have been committed by Walter **Melton**, Mark **Thomas**, and other identified and unidentified co-conspirators. **Melton**, **Thomas**, and other identified and unidentified co-conspirators have participated in activities, as consideration for the receipt of, or as consideration for a promise or agreement to pay, anything of pecuniary value from an enterprise engaged in racketeering activity, or for the purpose of gaining entrance to or maintaining or increasing position in an enterprise engaged in racketeering activity, murders, kidnaps, maims, assault with a dangerous weapon, commits assault resulting in serious bodily injury upon, or threatens to commit crime of violence against any individual in violation of the laws of any State or the United States, or have attempted or conspired to do so. Racketeering activity is defined as any act or threat involving murder, kidnapping, gambling, arson, robbery, bribery, extortion, dealing in obscene matter, or dealing in a controlled substance or listed chemical. There is also probable cause to search the property described in Attachment A for evidence, contraband, instrumentalities, and/or fruits of these crimes as further described in Attachment B.

**IDENTIFICATION OF THE DEVICE TO BE EXAMINED**

5.      The property to be searched is a LG Model LS676, cellular phone, MEID DEC number 089807360708852549, serial number 612CYZP0875445. The Device is currently located at the Cleveland Police Department Property room located at 1200 Ontario Street, Cleveland, Ohio 44113.

6.      The requested search warrant would authorize the forensic examination of the Device for the purpose of identifying electronically-stored data. Such data includes, but is not limited to, contact lists and/or address books, call logs, digital pictures, digital video, digital media, text messages, audio files, e-mails, personal calendars, downloaded internet content, internet protocol addresses (IP addresses), and Global Positioning System (GPS) points, as described in Attachment B.

**PROBABLE CAUSE**

7.      On June 30, 2017, **Thomas** was arrested by the Cleveland Police Department (CPD) for Felonious Assault (Shooting). Thomas was subsequently charged with Aggravated Robbery, Robbery, Kidnapping, Felonious Assault (two counts) and Having Weapons While Under Disability in Cuyahoga County Common Pleas Court case #CR-17-619856-A The state of Ohio vs Mark P. Thomas. The case is currently pending trial.

8.      SA Lewis reviewed two recorded phone calls placed by **Thomas** from the Cuyahoga County Jail, where Thomas is currently incarcerated, to phone number (216) 372-1514. Through the use of law enforcement databases, statements of confidential sources and informants, and other investigative methods, SA Lewis determined the aforementioned phone

3

number belongs to and is in the control of **Melton**. The first call from **Thomas** to **Melton** occurred on July 7, 2017 at 1555 hours. During the call, **Thomas** referred to **Melton** as "pops", a nickname previously identified in this investigation used to refer to **Melton**. During the call, **Melton** and **Thomas** discussed **Thomas'** pending criminal case. The second call from **Thomas** to **Melton** occurred on September 20, 2017 at 2043. During the call, Thomas again referred to **Melton** as "pops" and again discussed his pending criminal case. Also during the call, **Melton** and **Thomas** discussed the attempted murder of known "Gangster Disciples" street gang member, known as CW-1, on August 29, 2017 in East Cleveland, Ohio. **Melton** and **Thomas** referred to CW-1 by the nickname "Beast". **Melton** asks **Thomas** if he has heard CW-1 got shot. **Melton** states that CW-1 was shot in the Circle. The Circle is an area in East Cleveland that is in the Forestview Terrance Apartment complex. **Melton** lives in the Forestview Apartment complex. **Thomas** tells **Melton** during the phone call "When you do bullshit n***a what you expect? Bullshit not to come back?" **Melton** tells **Thomas** that "[CW-1] called the one dude momma a bitch, dude and them pulled up on him too, bro."

9. CW-1 has provided information throughout the investigation which has been demonstrated to be credible and reliable as said information was independently corroborated and confirmed through other investigative sources.

10. In an interview with CW-1, he/she stated that prior to being shot he/she saw **Melton** talking on the phone and overheard **Melton** say CW-1 is right here now.

11. The Gangster Disciples are a nationally known street gang who have their own by-laws, are organized by a rank structure, profit from the illegal sale of narcotics, and other illegal activity. The illegal sale of narcotics generates violence as Street Gangs fight over

territory. In my experience, members of organized criminal enterprises, to include the Gangster Disciples, use cellular phones to coordinate criminal activity. Often, communications are saved for periods of time while the enterprise is engaging in a particular scheme. Suspects in these criminal enterprises conduct conversations using text messages or other applications to include Facebook Messenger. Suspects in these criminal enterprises often take pictures of criminal activity, which are often stored on cellular phones as trophies and posted on social media sites to brag to other members of the criminal enterprise. Additionally, higher ranking members are informed of criminal activity via text or picture messages. Other information stored on the cellular phones is also useful in establishing a hierarchy of the criminal enterprise as well as determine other co-conspirators.

12. Your Affiant knows from this investigation and previous investigations conducted by state and local law enforcement that **Melton** holds the rank of Governor within the "Gangster Disciples".

13. Your Affiant utilized the law enforcement database Ohio Law Enforcement Gateway (OHLEG) and reviewed the "Security Threat Group" page for **Thomas**. On this page, **Thomas** is listed as "FOLKS/GANGSTER DISCIPLE" under the heading "STG Name". Under the "Scar/Mark/Tattoos" section, the page stated "Abdomen (TAT ABDOM) 6 Pt Stars, Folks, Pitch Forks." The use of the six pointed star, the term "folks", and the pitch fork are historically used insignia and terms used by the "Gangster Disciples" street gang nationally.

14. The Device is currently in the lawful possession of the CPD. It came into the CPD's possession during the arrest and subsequent investigation of **Thomas**. The Device is currently in the property room of the CPD. In my training and experience, I know that the

Device has been stored in a manner in which its contents are, to the extent material to this investigation, in substantially the same state as they were when the Device first came into the possession of the CPD.

## **TECHNICAL TERMS**

15. Based on my training and experience, I use the following technical terms to convey the following meanings:

   a. Wireless telephone:  A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals.  These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones.  A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone.  In addition to enabling voice communications, wireless telephones offer a broad range of capabilities.  These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet.  Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device.

b. Digital camera: A digital camera is a camera that records pictures as digital picture files, rather than by using photographic film. Digital cameras use a variety of fixed and removable storage media to store their recorded images. Images can usually be retrieved by connecting the camera to a computer or by connecting the removable storage medium to a separate reader. Removable storage media include various types of flash memory cards or miniature hard drives. Most digital cameras also include a screen for viewing the stored images. This storage media can contain any digital data, including data unrelated to photographs or videos.

c. Portable media player: A portable media player (or "MP3 Player" or iPod) is a handheld digital storage device designed primarily to store and play audio, video, or photographic files. However, a portable media player can also store other digital data. Some portable media players can use removable storage media. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can also store any digital data. Depending on the model, a portable media player may have the ability to store very large amounts of electronic data and may offer additional features such as a calendar, contact list, clock, or games.

d. GPS: A GPS navigation device uses the Global Positioning System to display its current location. It often contains records the locations where it has been. Some GPS navigation devices can give a user driving or walking directions to another location. These devices can contain records of the addresses or locations involved

in such navigation. The Global Positioning System (generally abbreviated "GPS") consists of 24 NAVSTAR satellites orbiting the Earth. Each satellite contains an extremely accurate clock. Each satellite repeatedly transmits by radio a mathematical representation of the current time, combined with a special sequence of numbers. These signals are sent by radio, using specifications that are publicly available. A GPS antenna on Earth can receive those signals. When a GPS antenna receives signals from at least four satellites, a computer connected to that antenna can mathematically calculate the antenna's latitude, longitude, and sometimes altitude with a high level of precision.

e. PDA: A personal digital assistant, or PDA, is a handheld electronic device used for storing data (such as names, addresses, appointments or notes) and utilizing computer programs. Some PDAs also function as wireless communication devices and are used to access the Internet and send and receive e-mail. PDAs usually include a memory card or other removable storage media for storing data and a keyboard and/or touch screen for entering data. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can store any digital data. Most PDAs run computer software, giving them many of the same capabilities as personal computers. For example, PDA users can work with word-processing documents, spreadsheets, and presentations. PDAs may also include global positioning system ("GPS") technology for determining the location of the device.

f.  Tablet: A tablet is a mobile computer, typically larger than a phone yet smaller than a notebook, that is primarily operated by touching the screen. Tablets function as wireless communication devices and can be used to access the Internet through cellular networks, 802.11 "wi-fi" networks, or otherwise. Tablets typically contain programs called apps, which, like programs on a personal computer, perform different functions and save data associated with those functions. Apps can, for example, permit accessing the Web, sending and receiving e-mail, and participating in Internet social networks.

g.  Pager: A pager is a handheld wireless electronic device used to contact an individual through an alert, or a numeric or text message sent over a telecommunications network. Some pagers enable the user to send, as well as receive, text messages.

h.  IP Address: An Internet Protocol address (or simply "IP address") is a unique numeric address used by computers on the Internet. An IP address is a series of four numbers, each in the range 0-255, separated by periods (e.g., 121.56.97.178). Every computer attached to the Internet computer must be assigned an IP address so that Internet traffic sent from and directed to that computer may be directed properly from its source to its destination. Most Internet service providers control a range of IP addresses. Some computers have static—that is, long-term—IP addresses, while other computers have dynamic—that is, frequently changed—IP addresses.

9

      i.    Internet: The Internet is a global network of computers and other electronic devices that communicate with each other.  Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

16.    Based on my training, experience, and research, and from consulting the manufacturer's advertisements and product technical specifications available online at http://www.lg.com/us/cell-phones/lg-LS676-Boost-tribute-hd, I know that the Device has capabilities that allow it to serve as a wireless telephone, digital camera, portable media player, GPS navigation device, social media access device, and PDA. In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

17.    Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device.  This information can sometimes be recovered with forensics tools.

18.    *Forensic evidence.*  As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how

the Device was used, the purpose of its use, who used it, and when.  There is probable cause to believe that this forensic electronic evidence might be on the Device because:

   a. Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

   b. Forensic evidence on a device can also indicate who has used or controlled the device.  This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

   c. A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

   d. The process of identifying the exact electronically stored information on a storage medium that are necessary to draw an accurate conclusion is a dynamic process.  Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators.  Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves.  Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

  e. Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

19. *Nature of examination.*  Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the device consistent with the warrant.  The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the device to human inspection in order to determine whether it is evidence described by the warrant.

20. *Manner of execution.*  Because this warrant seeks only permission to examine a device already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises.  Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## **CONCLUSION**

21. I submit that this affidavit supports probable cause for a search warrant authorizing the examination of the Device described in Attachment A to seek the items described in Attachment B.

## REQUEST FOR SEALING

22. It is respectfully requested that this Court issue an order sealing, until further order of the Court, all papers submitted in support of this application, including the application and search warrant.  I believe that sealing this document is necessary because the warrant is relevant to an ongoing investigation into the criminal organizations as not all of the targets of this

investigation will be searched at this time. Based upon my training and experience, I have learned that, online criminals actively search for criminal affidavits and search warrants via the internet, and disseminate them to other online criminals as they deem appropriate, i.e., post them publicly online through the carding forums. Premature disclosure of the contents of this affidavit and related documents may have a significant and negative impact on the continuing investigation and may severely jeopardize its effectiveness.

Respectfully submitted,

_____
Keith A. Lewis
Special Agent
Bureau of Alcohol, Tobacco, Firearms and Explosives

Sworn to before me and signed in my presence
On this 17 day of November, 2017.

_____
THOMAS M. PARKER
UNITED STATES MAGISTRATE JUDGE

13

## ATTACHMENT A

The property to be searched is a LG model LS676, serial number 612CYZP0875445, MEID DEC number 089807360708852549, hereinafter the "Device."  The Device is currently located at the Cleveland Police Department Property room 1200 Ontario Street, Cleveland, Ohio 44113.

This warrant authorizes the forensic examination of the Device for the purpose of identifying the electronically stored information described in Attachment B.

## ATTACHMENT B

This warrant authorizes the examination of the Device identified in Attachment A for the following records and content to the extent that it is related to violations of 18 U.S.C. § 1959 (violent crime in aid of racketeering) by Mark Thomas, Walter Melton, and other known and unknown co-conspirators (the "Targets"):

1. Entries in contact lists and/or address books relating to communications between the Targets and CW-1 concerning the organization, business, or dealing Gangster Disciples or completed or proposed violent criminal activity planned, facilitated, or encouraged by the Gangster Disciples (the "Target Activities");

2. Call logs relating to communications between the Targets and/or victims concerning the Target Activities;

3. Text and/or chat messages (including any photos or media exchanged) between the Targets and/or victims concerning the Target Activities;

4. Email messages between the Targets and/or victims concerning the Target Activities;

5. Photos and/or videos relating to the Target Activities;

6. Global positioning system points relating to the location of the Target Cellular Telephones;

7. Evidence of user attribution showing who used or owned the Device at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history;

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored,

including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.